IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| David Douglas Harsey, | ) | C/A No. 3:13-2036-TLW-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Cpl. Robert Marzol; Sgt. P. Dufault; Officer Watkins; and Officer Antley, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

    Plaintiff David Douglas Harsey filed this action through counsel pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights as well as state law violations by the named defendants. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 36.) Harsey filed a response in opposition (ECF No. 38) and the defendants filed a reply (ECF No. 39.) Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

## BACKGROUND

    The following facts are either undisputed or taken in the light most favorable to Harsey, to the extent they find support in the record. (See generally Compl. at 1-7, ECF No. 1 at 1-7.) Harsey's claims arise from an incident on August 9, 2011, when the defendants, who are all law enforcement officers, arrived at Harsey's residence at approximately 11:30 p.m. to investigate a reported disturbance. After obtaining consent from Harsey's mother to enter the premises, the defendants spoke to Harsey, who was intoxicated and using profanity. The defendants advised that Harsey

would not be arrested if he remained inside the home. Harsey followed the defendants to the doorway of the residence and continued to use profanity while directing them to leave. The defendants arrested Harsey for disorderly conduct and resisting arrest. During the arrest, Defendant Marzol deployed his taser, striking Harsey in the chest area.

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere

PJG

allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

**B.     Harsey's Claims**

   **1.     False Arrest and Malicious Prosecution**

To establish a § 1983 claim based on a Fourth Amendment violation for false arrest or malicious prosecution a plaintiff must show that the seizure was effected without probable cause. See Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014); Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001); Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996). Thus, there is no § 1983 claim for false arrest or malicious prosecution unless the officer lacked probable cause. See Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974). "Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). It requires more than bare suspicion, but less than evidence necessary to convict, Porterfield, 156 F.3d at 569, and the determination of whether probable cause exists is reviewed under the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 238 (1983); Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996).

In this case, Harsey was arrested without a warrant, and the issue before the court is not whether Harsey committed the offenses, but whether the defendants reasonably believed that Harsey committed the crimes. See Brown, 278 F.3d at 367 ("For probable cause to exist, there need only

be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required."). Accordingly, Harsey's argument that he is innocent of the crimes based on a subsequent dismissal of the charges by a state court does not establish that the defendants lacked probable cause. Rather, Harsey must demonstrate that the defendants' belief that a violation occurred was not only incorrect, but was objectively unreasonable. Id. at 367-68.

The record before the court shows that the defendants had grounds to reasonably believe that Harsey committed the crime of disorderly conduct. The affidavit testimony of Defendant Marzol indicates that Harsey had slurred speech, appeared grossly intoxicated, and began cursing at Marzol on August 20, 2011. (Marzol Aff. at 2, 36-2 at 2.) When Marzol advised Harsey that he would be arrested if he did not remain indoors, Harsey approached Marzol in a manner that Marzol deemed threatening. (Id.) As Marzol exited the residence and entered the yard, Harsey came to the door shouting profanity. (Id.) The defendant officers turned to approach the house and Harsey went inside and closed the door. (Id.) Believing that Harsey would continue to open the door and shout obscenities then retreat inside the residence, Defendants Marzol and Antley positioned themselves on the side of the porch and grabbed Harsey's left arm when he again opened the door to yell at the officers. (Id. at 2-3) Harsey attempted to break away and re-enter the house, dragging Marzol towards a couch. (Id. at 3.) Harsey refused to comply with Marzol's directives to place his hands behind his back and continued to shout obscenities. (Id.) When Harsey broke away from Marzol's grip and continued to be non-compliant, Marzol deployed his taser. (Id.) Marzol testified that Harsey still refused to cooperate and Marzol deployed two additional bursts with the taser. (Id.) Harsey was then handcuffed and charged with disorderly conduct in violation of Section 28-83 of

the City of Cayce Code of Ordinances, and resisting arrest in violation of Section 28-204 of the City's Code of Ordinances. (Id.) The defendants provide a copy of the ordinance, which defines disorderly conduct, in part, as the act of uttering "while in a state of anger, in the presence of another, any lewd or obscene words or epithets." (Code of Ordinances at 2, ECF No. 36-2 at 9.)

Harsey's deposition testimony confirms that he was intoxicated, having consumed a six-pack of beer and a pint of whiskey prior to the defendants' arrival. (David Harsey Dep. at 64, 68, 81, ECF No. 36-3 at 5, 9, 22.) Harsey admitted to cursing at the defendants and yelling obscenities at the defendants from the doorway of the residence. (Id. at 71-72, 94-96, ECF No. 36-3 at 12-13, 35-37.) Harsey also recalled getting up from his bed while Marzol was in the residence, and moving within five feet of Marzol in a manner that Harsey opined was "too quick" and "startled" Marzol. (Id. at 88-89, ECF No. 36-3 at 29-30.)

In his response in opposition to the defendants' motion, Harsey continues to dispute the legality of his arrest, denies violent or dangerous actions, denies resisting arrest, and denies leaving his residence while the defendants were present. (Pl.'s Resp. Opp'n Summ. J. at 2, ECF No. 38 at 2.) Harsey further indicates that a municipal court judge dismissed the disorderly conduct charge because the "incident report and criminal discovery said nothing of any violent or dangerous actions on Plaintiff's part." (Id. at 4.) However, Harsey does not dispute that he had been drinking alcohol prior to the defendants' arrival, or the defendants' contention that Harsey became angry and yelled obscenities at the defendants from the doorway of his residence. Further, while Harsey's response (id. at 3-4) cites to cases holding that a person cannot be punished under South Carolina's public disorderly conduct statute for "voicing their objections to sheriff's officers where the record indicates no use of fighting words," State v. Perkins, 412 S.E.2d 385, 386 (S.C. 1991) (discussing punishment

under S.C. Code Ann. § 16-17-530), Harsey fails to forecast evidence to demonstrate that any portion of disorderly conduct Ordinance 28-83, under which he was arrested, had been found unconstitutional at the time of his arrest. See Michigan v. DeFillippo, 443 U.S. 31, 37-38 (1979) (holding that probable cause existed where an officer observed conduct which "violated a presumptively valid ordinance").

As Harsey has not presented evidence to demonstrate that the defendants lacked an objectively reasonable belief that Harsey violated Ordinance 28-83, the court finds that the defendants had probable cause to arrest Harsey for disorderly conduct. The court need not decide whether the defendants also had probable cause for the resisting arrest charge, as a finding of probable cause for "at least one charge for an arrest on multiple charges [is sufficient to] withstand a Fourth Amendment challenge." Gantt v. Whitaker, 57 F. App'x 141, 149, n.7 (4th Cir. 2003); Gardner v. Long, C/A No. 8:09-2563-TLW-BHH, 2010 WL 5691645, at *5 (D.S.C. Nov. 3, 2010) (same), adopted by 2011 WL 379757 (D.S.C. Feb. 2, 2011). Accordingly, based on the record before the court and the totality of the circumstances, the court concludes that no reasonable jury could find that Harsey's arrest was made without probable cause. As such, the defendants' motion for summary judgment should be granted as to Harsey's false arrest and malicious prosecution claims.

**2.     Warrantless Entry**

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions. It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)



(internal quotation marks and citations omitted).  In the present case, it is undisputed that the defendants obtained consent from Harsey's mother prior to entering the residence on August 10, 2011.  (See Marzol Aff. at 2, ECF No. 36-2 at 2; David Harsey Dep. at 73, ECF No. 36-3 at 14; Dorothy Harsey Dep. at 56, ECF No. 36-4 at 2.)

Harsey's response in opposition to the defendants' motion concedes that the warrantless entry was lawful.  (Pl.'s Resp. Opp'n Summ. J. at 4, ECF No. 38 at 4.)  Harsey further asserts that he was placed on house arrest by Marzol in violation of the Fourth Amendment.  (Id.)  However, Harsey did not plead this house arrest claim in the Complaint and "a party is generally not permitted to raise a new claim in response to a motion for summary judgment."  White v. Roche Biomedical Laboratories, Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992); see also Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment).  Moreover, as argued by the defendants, even if the court were to consider this new theory of recovery, such a claim is wholly unsupported by any controlling authority in Harsey's response.  Accordingly, based on the record before the court, the court concludes that no reasonable jury could find the defendants' entry into Harsey's residence unlawful, and the defendants' motion for summary judgment should be granted as to Harsey's claims associated with such entry.

    **3.**    **Due Process**

To the extent Harsey alleges a violation of due process based on malicious prosecution, this claim has already been addressed above.  Moreover, Harsey's conclusory allegation that he was punished by the defendants while in pretrial custody without a hearing or any due process is insufficient to state a plausible due process claim under § 1983.  While the court must liberally

construe a *pro se* complaint, the United States Supreme Court has made clear that a plaintiff must do more than make conclusory statements to state a claim.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009); see also Fed. R. Civ. P. 8(a)(2) (providing that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief.").  Instead, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (holding that a plaintiff must provide sufficient factual allegations to "nudg[e] [the] claims across the line from conceivable to plausible").

In this case, Harsey has provided only a conclusory allegation of pretrial punishment by the defendants, without alleging actual facts or forecasting evidence to support them that would demonstrate a denial of due process.  Therefore, the defendants' motion for summary judgment should be granted as to Harsey's due process claims.

### 4. First Amendment

"A cognizable First Amendment retaliation claim requires a plaintiff to show: (1) 'that [plaintiff's] speech was protected'; (2) 'defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech'; and (3) 'a causal relationship existed between [plaintiff's] speech and the defendant's retaliatory action.' " Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685-86 (4th Cir. 2000)).

The defendants assert that Harsey has failed to plead the elements of, or present evidence to support, a claim under the First Amendment. The defendants further argue that, in any event, they are entitled to qualified immunity on such a claim based on existing caselaw.  In response, Harsey asserts that he adequately alleged a First Amendment claim in paragraph thirty-three of the



Complaint. (Pl.'s Resp. Opp'n Summ. J. at 6, ECF No. 38 at 6.) Harsey further argues that his speech was protected and reiterates his allegation that he was arrested without probable cause in retaliation for such speech. (Id. at 6-7.) Harsey also generally asserts that officials "lose the protection of [qualified] immunity if they violate a constitutional or statutory right of the Plaintiff and the right was clearly established at the time of the alleged violation such that an objectively reasonable official in the Defendants' position would have known of it." (Id. at 6.) However, Harsey provides no specific argument to refute the defendants' contention that they are entitled to qualified immunity on the First Amendment retaliatory arrest claim based on the authority discussed below.

As argued by the defendants, at the time of Harsey's arrest in August 2011, the law was clear that "a plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause." McCoy v. City of Columbia, 929 F. Supp. 2d 541, 559 (D.S.C. 2013) (discussing the United States Supreme Court's decision in Hartman v. Moore, 547 U.S. 250 (2006)). While several federal courts of appeal have held that Hartman's "no-probable-cause requirement also extends to retaliatory arrests," the "Court of Appeals for the Fourth Circuit has not squarely addressed" the issue of whether a retaliatory arrest, supported by probable cause, violates the First Amendment. Id. at 559-560. Moreover, the United States Supreme Court determined that, subsequent to Hartman, "it was not clearly established that an arrest supported by probable cause could violate the First Amendment." Reichle v. Howards, 132 S. Ct. 2088, 2095-97 (2012) (finding that "reasonable officers could have questioned whether the rule of Hartman also applied to arrests," and reversing the Tenth Circuit's ruling that the defendants were not entitled to qualified immunity on a First Amendment retaliatory arrest claim).



Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 235, 242.

In this case, the court has determined that the defendants had probable cause to arrest Harsey for disorderly conduct. Therefore, to the extent the existence of probable cause prohibits a claim for retaliatory arrest under the First Amendment, the defendants' motion for summary judgment should be granted. See Haley v. Josey, C/A No. 0:09-714-JMC-PJG, 2011 WL 489918, at *3 (D.S.C. Jan. 19, 2011) (finding pre-Reichle that, under Hartman, "probable cause for arrest necessarily defeats [a plaintiff's] First Amendment claim, regardless of the [officer's] motivation"), adopted by 2011 WL 505010 (D.S.C. Feb. 10, 2011). Moreover, as ably argued by the defendants, less than a year after Harsey's arrest, the Supreme Court held the law regarding retaliatory arrests in violation of the First Amendment to be unsettled. See Reichle, 132 S. Ct. at 2096-97 (holding that "Hartman injected uncertainty into the law governing retaliatory arrests . . . . [which was] confirmed by subsequent appellate decisions that disagreed over whether the reasoning in Hartman applied similarly to retaliatory arrests"). Thus, it "was at least arguable that Hartman's rule extended to retaliatory arrests" at the time the defendants arrested Harsey. Id. at 2096. Accordingly, the court

finds that, to the extent Harsey's First Amendment retaliatory arrest claim is not precluded by the finding of probable cause to support the arrest, the defendants are entitled to qualified immunity. See Reichle, 132 S. Ct. at 2096-97; McCoy, 929 F. Supp. 2d at 561-62. As such, the defendants' motion for summary judgment should be granted as to Harsey's First Amendment claim.

**C.     State Law Claims**

The defendants assert that they are entitled to immunity from Harsey's state law claims under the South Carolina Tort Claims Act, which is the exclusive remedy for individuals suing government employees acting within the scope of their employment. See S.C. Code Ann. § 15-78-70(a); see also S.C. Code Ann. § 15-78-20(b) (partially waiving sovereign immunity and providing for "liability on the part of the State, its political subdivisions, and employees, while acting within the scope of official duty"). Under the Tort Claims Act, the State expressly consents to suit only in a South Carolina state court, and does not consent to suit in a federal court or in a court of another state. S.C. Code Ann. § 15-78-20(e); see also Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 n.9 (1984) (recognizing that a state must expressly consent to suit in a federal district court).

In his response in opposition to the defendants' motion, Harsey asserts that the defendants are "sued as individuals and do not come under the confines" of the Tort Claims Act. (Pl.'s Resp. Opp'n Summ. J. at 7, ECF No. 38 at 7.) Harsey further argues that the defendants are not protected by the Tort Claims Act because they acted with "actual malice, intent to harm and aggravated assault and other offenses." (Id. at 7-8.) However, as argued by the defendants, Harsey fails to forecast evidence to demonstrate that the defendants acted outside the scope of their employment, or that the defendants' actions otherwise render the protection of the Tort Claims Act inapplicable.



Accordingly, Harsey cannot bring his state tort claims in federal court.  See DeCecco v. Univ. of South Carolina, 918 F. Supp. 2d 471, 498 (D.S.C. 2013).

**D.     Other Claims**

To the extent that Harsey's Complaint may be construed to allege any other causes of action, the court finds that Harsey has failed to plead sufficient facts to state a plausible claim.  See Iqbal, 556 U.S. 662.

## RECOMMENDATION

Accordingly, the court recommends that the defendants' motion for summary judgment be granted.  (ECF No. 36.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 29, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).